UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHN SHEETZ,                          :

    Plaintiff,                    :

V.                                    :   CASE NO. 3:10-cv-01049(RNC)

TOWN OF WINDHAM,                      :

    Defendant.                    :

<u>RULING AND ORDER</u>

Plaintiff John Sheetz, a former captain in the Willimantic Fire Department, brings this action against the Town of Windham seeking payment of pension benefits.  The parties agree that the plaintiff is eligible for benefits but disagree as to the date when he should begin receiving them.  Pending are cross-motions for summary judgment on the plaintiff's claims for breach of contract and promissory estoppel.  The cross-motions are denied with regard to the breach of contract claim because the relevant contract language is ambiguous and extrinsic evidence of the parties' intent creates a genuine issue of material fact.  With regard to the promissory estoppel claim, the plaintiff's motion for summary judgment is denied and the defendant's motion is granted.

I.  <u>Facts</u>

The pension plan is part of a collective bargaining agreement ("CBA") between the Town of Windham and the firefighters local union.  The plan provides that "a participant who terminates employment with ten (10) or more years of service

prior to his Normal Retirement Date . . . shall be 100% vested in his Accrued Benefit payable at his Normal Retirement Date." CBA Art. 25 § 2. The term "Normal Retirement Date" is not defined. The only definitions regarding retirement in the plan are the following:

> Section 6 - Retirement and Retirement Benefits:
>
> (a) Mandatory Retirement: Any permanent member of the Fire Department, upon having reached the age of sixty years, shall automatically be retired. . . .
>
> (b) Elective Retirement: Any permanent member of the fire department, regardless of age, who has completed twenty-five (25) or more years of continuous permanent service shall, upon receipt of his/her written application by the Board of Trustees, be retired.
>
> (c) Retirement Benefit: Upon retirement, in accordance with subsection (a) or (b) above, whichever is applicable, the member will be entitled to an annual pension during his lifetime.

CBA App. A § 6.

Plaintiff retired from the Willimantic Fire Department in 2006 after twenty years of service. He was forty-two at the time he retired. Before terminating his employment, plaintiff reviewed the language of the pension plan and received assurances from both Windham and union officials that the term "Normal Retirement Date" referred to the twenty-five year Elective Retirement standard provided in subsection (b). Specifically, controller Robert Buden, the town official most knowledgeable about the plan, confirmed for the plaintiff that if he stopped working he would be eligible to start receiving benefits in 2011,

on the twenty-fifth anniversary of his hire date.  Buden gave the plaintiff a disbursement estimate consistent with that date.

In reliance on the representations of town officials, plaintiff retired and moved to Maine.  He subsequently sought and received assurances from the town that his retirement papers would be delivered to him there.  That never happened, however. Instead, the town changed its position regarding the proper interpretation of the pension plan and informed the plaintiff that he would not receive benefits until he turns sixty years of age.  This litigation ensued.

In his motion for summary judgment, plaintiff argues that the pension plan is ambiguous, and the "Normal Retirement Date" of a firefighter with ten or more years of service refers to the twenty-fifth anniversary of his date of hire.  In support of his position, he offers extrinsic evidence in the form of deposition testimony by union officials who participated in pension negotiations with the town.  Plaintiff asks the Court to reform the contract accordingly.  Alternatively, he seeks a ruling that the representations made to him by town officials on which he relied in deciding to retire create an estoppel preventing the town from withholding benefits.

Defendant moves for summary judgment on the ground that the pension plan unambiguously establishes a "Normal Retirement Date" of sixty years of age, as provided in subsection (a) on Mandatory

3

Retirement.  Defendant also argues that Connecticut's <u>Fennel</u>
doctrine bars the promissory estoppel claim.  In addition, the
defendant submits extrinsic evidence supporting its
interpretation of the pension plan.

II. <u>Discussion</u>

Summary judgment is appropriate when there is no genuine
issue of material fact and the movant is entitled to judgment as
a matter of law.  Fed. R. Civ. P. 56(c);  <u>Kuebel v. Black &</u>
<u>Decker Inc.</u>, 643 F.3d 352, 358 (2d Cir. 2011).  In deciding
whether this standard is met, all inferences must be drawn
against the moving party.  <u>Seiden Associates, Inc. v. ANC</u>
<u>Holdings, Inc.</u>, 959 F.2d 425, 429 (2d Cir. 1992).

A. <u>Breach of Contract</u>

In cases involving a dispute about the meaning of a written
contract, summary judgment may be granted when the words of the
contract "convey a definite and precise meaning absent any
ambiguity." <u>Seiden Associates</u>, 959 F.2d at 428.  "Where the
language used is susceptible to differing interpretations, each
of which may be said to be as reasonable as another, and where
there is relevant extrinsic evidence of the parties' actual
intent, the meaning of the words becomes an issue of fact and
summary judgment is inappropriate." <u>Id.</u>  In such a case, "an
opportunity to present extrinsic evidence must be afforded to
establish what the original contracting parties intended." <u>Id.</u>

4

at 430 (reversing grant of summary judgment because interrelationship of two provisions in agreement was susceptible to several reasonable interpretations).

Defendant argues that, despite the absence of an explicit definition of "Normal Retirement Date," the pension plan language is unambiguous. To receive benefits under Section 6(c), defendant argues, one must qualify for "retirement" by turning sixty or completing twenty-five years of continuous service. Otherwise, subsections (a) and (b) would be superfluous. The defendant's argument has some force but it does not foreclose the plaintiff's interpretation of the pension plan as a matter of law. If, as defendant argues, subsections (a) and (b) are the exclusive ways of triggering retirement, the ten-year vesting provision is rendered superfluous and an employee who leaves the Fire Department after more than ten but less than twenty-five years of service is never able to reach a Normal Retirement Date. It is not clear that this is what the contracting parties intended. Indeed, the plan is reasonably susceptible to the plaintiff's competing interpretation, which was confirmed by town officials before he retired.

When a contract provision is ambiguous, a court may look to extrinsic evidence to determine what the contracting parties intended the provision to mean. In this case, the parties submit conflicting evidence. Plaintiff relies on the deposition

testimony of a participant in the original pension plan
negotiations on behalf of the union, John Griffin.  Mr. Griffin
has testified that during the negotiations, the union "proposed
that a person who had [over ten] years of service and then
retired could collect a pension on the 25th anniversary of [his]
hire date," and the Town agreed.  Griffin Dep. (ECF No. 39 Ex. 6)
at 10.  This testimony is corroborated by other union
negotiators.

Defendant relies on the affidavit of Windham's former
controller, Katherine Maxwell, who was not present for the
original collective bargaining sessions but participated in
subsequent negotiations with the firefighters local.  In her
affidavit, Ms. Maxwell denies that the union ever proposed that a
firefighter would be entitled to a pension on the twenty-fifth
anniversary of his date of hire.  Maxwell Aff. (ECF No. 44 Ex. 2)
at 2.  The affidavit explains that if such a proposal had been
made, it would have been recorded in writing and submitted to
actuaries to calculate its financial impact on the Town.  Id.
The affidavit states that in the 1989 contract negotiations, the
union did propose language providing for elective retirement
after twenty years of continuous service.  Id. at 3.  The Town
rejected the proposal and instead proposed a standard of twenty-
five years of continuous service.  Id.  The matter was submitted
to arbitration, and the arbitration panel found in favor of the

6

Town.  Town of Windham v. IAFF, Local 1033, 9192-MBA34 at 18 (1992).  No precedent for plaintiff's situation under the pension plan has been discovered by either party, nor have any of the drafters of the pension plan's language been located.

In these circumstances, issues of material fact are presented with regard to the contract claim, including the meaning of the term "Normal Retirement Date"; whether the parties' failure to define this term in the pension plan constitutes a mistake; and which party was responsible for drafting the plan.  Accordingly, the cross-motions for summary judgment as to this claim are denied.

### B. Promissory Estoppel

Under the doctrine of promissory estoppel, "a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Stewart v. Cendant Mobility Serv. Corp., 267 Conn. 96, 104 (2003) (quoting Restatement (Second) of Contracts § 90 (1981)). Promissory estoppel is disfavored, however, in the municipal context.  See Fennell v. City of Hartford, 238 Conn. 809, 816 (1996).  To avoid "endless litigation over both real and imagined claims of misinformation by disgruntled citizens [and employees], imposing an unpredictable drain on the public fisc," Connecticut

courts "have consistently refused to give effect to government-fostered expectations that, had they arisen in the private sector, might well have formed the basis for a contract or an estoppel." Id.

Municipal estoppel may be invoked "(1) only with great caution, (2) only when the resulting violation has been unjustifiably induced by an agent having authority in such matters, and (3) only when special circumstances make it highly inequitable or oppressive not to estop the agency." Constantino v. Town of Madison, CV116020818, 2012 WL 1662432 at *3 (Conn. Super. Ct. Apr. 19, 2012) (citing Chotkowski v. State, 240 Conn. 246, 268–69 (1997)).  Under Connecticut law, agents of a municipality "have no source of authority beyond the charter." Ferrucci v. Town of Middlebury, 131 Conn. App. 289, 303 (2011).

The Windham Town Charter, vests legislative and contractual power exclusively in the Board of Selectmen.  1991 Windham Town Charter § V-3.  Pursuant to the Charter, the Board has the power to enact general welfare ordinances and resolutions not inconsistent with the Charter or the Connecticut General Statutes.  Id.  Under this authority, the Board entered into the CBA and negotiated the pension plan with the firefighters local. The exclusive procedure for amending such a collective bargaining agreement is provided by statute.  Conn. Gen. Stat. Ann. §§ 7-472, *et seq*.  It is undisputed that controller Burden did not

8

have authority under the Charter or Connecticut law to bind the town by contract or to modify provisions of the collective bargaining agreement.

Plaintiff argues that "this case is not one where Sheetz seeks to contradict the unambiguous language of a municipal contract as was the case in . . . Fennel."  However, the touchstone of the municipal estoppel analysis derived from Fennel is the authority of the municipal agent to bind the municipality rather than the language of the contract.  Extra-contractual representations made by authorized agents can be binding if the elements of promissory estoppel are met, while those made by unauthorized agents are never binding.  If an agent merely promises what the contract provides, it is not a case of promissory estoppel at all but a breach of contract case.

Here, for example, whether or not the contract means what the plaintiff alleges does not augment the authority of controller Buden to bind the municipality.  If the pension plan allows for benefits to be paid to the plaintiff on the twenty-fifth anniversary of his hiring, then he prevails on a breach of contract claim, regardless of controller Buden's representations; if the plan does not allow it, neither controller Buden nor any other town official has the authority to circumvent the collective bargaining process and make it so.

As the Fennel doctrine sharply circumscribes municipal

9

estoppel and no genuine issue of material fact exists as to the authority of controller Buden under the Charter, the plaintiff's motion for summary judgment as to the promissory estoppel claim is denied and the defendant's motion for summary judgment on this claim is granted.

III.   <u>Conclusion</u>

Accordingly, plaintiff's motion for summary judgment (ECF No. 39) is hereby denied and defendant's motion (ECF No. 35) is granted as to the promissory estoppel claim but denied as to the breach of contract claim.

So ordered this 6th day of March 2013.


<u>          /s/RNC          </u>
Robert N. Chatigny
United States District Judge